Commonwealth, to use, Appellant, *v.* Roberts.

Argued November 15, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Julius J. Lorenzi,* for appellant.

*William H. Eckert,* with him *Ralph H. Smith, Jr., Roderick G. Norris, J. M. McCandless,* and *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellees.

OPINION BY ERVIN, J., March 20, 1957:

This is an appeal by plaintiff from the order of the Court of Common Pleas of Allegheny County sustaining preliminary objections in the nature of a demurrer and entering judgment in favor of the defendants in an action in assumpsit brought by Pete Orris, an individual, against David B. Roberts, Prothonotary of Allegheny County, and the Continental Casualty Company, as surety on the prothonotary's bond.

The pertinent facts which are not in dispute are stated in the opinion of the court below as follows: "Peter Orris, the use plaintiff in this action, is the payee in a judgment note given by one Edith M. Whitaker, dated August 11, 1952. On August 15, 1952, an attorney for the plaintiff presented to the cashier in the Office of the Prothonotary of Allegheny County a judgment confessed by one George A. Dawson, Esq., as attorney for debtor, on said judgment note in the amount of $800.00. At the same time plaintiff's attorney paid the statutory fee required for filing the judgment. After the cashier had assigned a number to the judgment, viz., D.S.B. No. 1337 October Term, 1952, he handed the same to one Harry Haas, 'who is employed by the County of Allegheny in the Office of the Prothonotary of the Court of Common Pleas of said County as a clerk to index judgments.'

"Judgments are indexed in the Office of the Prothonotary of Allegheny County under a system of key letters, in conformity with the 'Russell Index System'. The proper index letters for 'Whitaker', under that system, are the letters 'T R'. Mr. Haas in indexing said judgment omitted the key letter 'T' and indexed the same in the section of the judgment index having the key letter 'R'.

"The plaintiff alleges in his complaint that, at the time the judgment note was filed in the Office of the Prothonotary, Edith M. Whitaker was the owner of certain real estate in Allegheny County which she conveyed to third parties for $11,000.00, by a deed dated October 17, 1952, and recorded on October 18, 1952. Plaintiff further alleges that on June 16, 1955, he caused to be issued a writ of fieri facias at No. 613 July Term, 1955, and on September 8, 1955, a writ of alias fieri facias, both of which proved to be unsuccessful, and that the plaintiff firmly believes that said Edith M. Whitaker is now execution proof.

"It is agreed by stipulation filed in this case that 'the indexing of the judgment' against Edith M. Whitaker 'was done wholly and solely by said Harry Haas who is paid by the County of Allegheny out of its general funds.' "

The sole issue here involved is whether the Prothonotary of Allegheny County is liable on his official bond to a judgment creditor who suffered damages as a result of the failure of the prothonotary's authorized deputy or clerk to properly index a judgment.

The court below held that judgment in favor of defendants must be entered, stating that "On general principles of law, it is clear that the doctrine of 'respondeat superior' does not apply here, because the County of Allegheny and not the Prothonotary is the employer ('superior') contemplated in that legal maxim."

However, the Legislature has imposed on the prothonotary an absolute statutory duty to properly index all judgments and his failure to do so renders him liable on his official bond. The Act of March 29, 1827, P. L. 154, §3, 17 PS §1903, imposing this duty on the prothonotary reads in part as follows: "It shall be the

duty of each of the prothonotaries of the several courts of common pleas district courts and circuit courts in this commonwealth, to make, prepare and keep a docket, to be called the judgment docket . . . ."

Also, the Act of April 22, 1856, P. L. 532, §3, 17 PS §1922, required a creditor, in order to obtain a lien on the debtor's real estate within the county, to cause his judgment to be indexed in a judgment index, and stated: ". . . and it shall be the duty of the prothonotary or clerk forthwith to index the same according to priority of date, and the plaintiff shall furnish the proper information to enable him to perform said duty."

Under the foregoing statutes, the prothonotary owed the plaintiff and all other judgment creditors a duty to properly index his judgment when it was presented to him for that purpose on the payment of the necessary fee and on furnishing the prothonotary with the necessary information to properly index the judgment. The importance of the duty thus imposed on the prothonotary is well stated in *Saylor et al. v. Com.*, 1 Sadler 535, 5 A. 227, where it was said: "By far the most important and responsible duty of the prothonotary is to enter judgments correctly. As to mistakes or omissions in other matters connected with the office, an amendment will correct the error. But not so with judgments. A wrong name or amount in entering of a judgment or an omission to properly enter or index it, will in most instances subject a plaintiff to loss before the mistake is discovered, and when discovered, it is too late to remedy the evil."

It is also important to note that the Act of April 14, 1834, P. L. 333, §76, 17 PS §1481, requires the prothonotary to give bond with surety conditioned upon the faithful execution of the duties of his office.

In the instant case the defendant, David B. Roberts, as principal, and the defendant, Continental Casualty Company, as surety, on December 11, 1951, executed a bond as required by the Act of 1834. The condition of this bond reads as follows: "NOW, THE CONDITION OF THIS OBLIGATION IS SUCH, That, if the above bounden DAVID B. ROBERTS, Prothonotary in the Court of Common Pleas of Allegheny County, and his deputies, clerks, assistants, and appointees, shall faithfully discharge all trust confided in him and all duties required of him by law and faithfully execute the duties of the office of Prothonotary, and shall faithfully and well and truly account for and pay according to law all moneys which are received by him or them in their official capacity, and shall deliver the books, seals, records, writings, and papers belonging to the office of said Prothonotary, whole, safe, and undefaced to his successor in said office, then this bond shall be void: otherwise to be and remain in full force and virtue."

It will be noted that the bond here involved was conditioned upon the faithful execution of the duties of his office not only by the prothonotary but by his deputies, clerks, assistants and appointees. Thus, the bond given by the prothonotary clearly provides protection not only for the failure of the prothonotary personally to properly perform his duties but for the failure of his duly authorized assistants.

It has long been the law in this Commonwealth that the failure of the prothonotary himself in performing the duties of his office makes him liable on his official bond. *Saylor et al. v. Com.*, supra; *Ziegler v. Com.*, 12 Pa. 227; *Van Etten v. Com.*, 102 Pa. 596; *Wilson v. Arnold*, 172 Pa. 264, 33 A. 552.

It is argued, however, that since the error in the instant case was caused by a subordinate of the pro-

thonotary that the prothonotary is not liable on his bond. It is pointed out by the court below in its opinion that the number of clerks in the office of the Prothonotary of Allegheny County as well as their respective salaries are determined by the Salary Board and the court below concludes that the relationship of master and servant does not exist between the prothonotary and the clerks in his office. It is conceded that the prothonotary selects the persons he employs and has the right to dismiss them. However, in determining that the doctrine of "respondeat superior" does not apply in the instant case, the court below ignored one of the most important, if not the most essential factor to be considered in determining whether or not such a relationship exists, namely, that of control. Despite the fact the employees in the prothonotary's office are neither employed by nor paid by the prothonotary, it can hardly be disputed that in the performance of their duties they are subject to his supervision and control. Pertinent and applicable here is comment a of Restatement, Security, §174: "Most public offices have employees other than the principal officer and many officers have one or more deputies. The employees are always subject to the control of the principal officer. The deputies are also subject to the general control of the principal officer although they may have certain functions which cannot be changed by the officer. A deputy may act in place of the officer in the officer's absence or incapacity. Deputies, as well as employees, are usually appointed by the officer although his choice may be restricted or even determined by laws and regulations regarding official personnel. The officer, irrespective of his appointive power, is generally responsible for the wrongful acts of deputies and employees and for their failure to act where action should be

taken. Even in the case of a deputy, the act of the deputy is the act of the officer, unless otherwise provided by statute." In our view, the exercise of control in the assignment of duties, and the supervision of the work amongst subordinates renders the prothonotary liable for the negligence of his employees in the performance of their duties even under the theory of "respondeat superior."

It is also contended by appellees that the tremendous volume of work in the office of the Prothonotary of Allegheny County renders it impossible for the prothonotary to personally perform all the duties of the office himself or to personally supervise the performance by the numerous clerks who must necessarily be employed in his office and, therefore, he should not be held liable for the mistakes of his assistants. With this contention we cannot agree. From a practical viewpoint, a system of checking and verification of judgments entered by employes in the prothonotary's office would preclude the occurrence of a mistake such as is involved in the instant proceeding. The prothonotary cannot be relieved of the duty imposed upon him by statute simply because the volume of work in his office is so great as to require the employment of numerous clerks and assistants.

Holding, as we do, that the prothonotary is liable for the default of his clerk in the instant proceeding, it follows that the surety on his bond is also liable.

In view of the stipulation filed by the parties with the court below requesting the court "to decide the liability of the defendant finally on said preliminary objections", the judgment is reversed and herein entered for the plaintiff.

WRIGHT, J., would affirm upon the opinion of Judge ELLENBOGEN for the court en banc.